IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Sharon Johnson,<br><br>  Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting<br>Commissioner of Social Security,<br><br>  Defendant.<br>_____ | Civil Action No. 2:14-00400-RMG-MGB<br><br><br><br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Sharon Johnson, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was 44 years old on her alleged disability onset date of August 28, 2009. (R. at 62, 74.) She alleged disability due to, *inter alia*, obesity, discogenic back pain, calcifying tendinitis of the shoulder, and lumbago. (See R. at 65.) Plaintiff has at least a high school education and past relevant work as a fraud analyst or internal auditor. (R. at 74.)

Plaintiff protectively filed an application for DIB on November 8, 2010, and an application for SSI on December 27, 2010. (R. at 62.) Her applications were denied initially and on reconsideration. (R. at 62.) After a hearing before an Administrative Law Judge (ALJ) on June 7,

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

2012, the ALJ issued a decision on July 24, 2012, in which the ALJ found that Plaintiff was not disabled. (R. at 62-76.) The Appeals Council denied Plaintiff's request for review (R. at 7-9), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)     The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> (2)     The claimant has not engaged in substantial gainful activity since August 28, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3)     The claimant has the following severe impairments: Obesity; Lumbar Radiculopathy, Bilateral L5 pattern, Right L4, Right S1 Pattern; Discogenic Back Pain, Calcifying Tendinitis of Shoulder; Lumbago; and, Thoracic or Lumbosacral Neuritis or Radiculitis Unspecified (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can occasionally climb ramps or stairs and balance. The claimant cannot stoop, kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. The claimant can do work that provides a sit-stand option. The claimant can do work that allows her to avoid concentrated exposure to workplace hazards, such as unprotected heights and dangerous machinery.
>
> (6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7)     The claimant was born on July 28, 1965 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> (8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

> (9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10)     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> (11)     The claimant has not been under a disability, as defined in the Social Security Act, from August 28, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that supplemental security income (SSI) disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. See 42 U.S.C. § 1381 *et seq*. "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[2]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing

---

[2]"[T]he definition of disability is the same under both DIB and SSI . . . ." Mason v. Colvin, Civ. A. No. 9:12-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (citing Emberlin v. Astrue, Civ. A. No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

substantial gainful employment. See 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

4

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## DISCUSSION

The Plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, Plaintiff asserts the ALJ's "step 5 denial cannot stand" because the case *sub judice* "is a case where the issue of transferability of skills was outcome-determinative," but the "record and the ALJ's decision contain no evidence or findings pertinent to the issue of skill transferability." (Dkt. No. 12 at 3.) The Commissioner argues that transferability of skills is simply not an issue in this case, because "individuals who have completed formal schooling through high school as well as two years of college, as Plaintiff has, are considered capable of semi-skilled work and the ALJ need not analyze transferable skills." (Dkt. No. 13 at 7-8 of 11.)

In the instant case, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a "'fraud analyst or internal auditor' (DOT #160.167-034, light, skilled, SVP 7)." (R. at 74.) The ALJ also concluded that "[t]ransferability of job skills [was] not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (R. at 74.) The ALJ noted the testimony of the vocational expert ("VE") that an individual with Plaintiff's Residual Functional Capacity ("RFC") "would be able to perform the requirements of representative occupations, such as:"

| JOB | DOT# | EXERTIONAL LEVEL | SPECIFIC VOCATIONAL PROFILE | #NATION | #SC |
|---|---|---|---|---|---|
| Reference Clerk | 216.382-062 | Sedentary | SVP 4 | 300,000 | 2,100 |

| Data Examination Clerk | 209.387-022 | Sedentary | SVP 3 | 263,000 | 2,400 |
| Receptionist | 237.367-038 | Sedentary | SVP 4 | 599,000 | 6,000 |

(R. at 75.)

Very little is in dispute in the instant case. The parties agree that the "Grids" do not control, and that the ALJ was required to consult a VE because Plaintiff has limitations that "impede the ability to perform the full range of work in a given strength category." (Dkt. No. 13 at 6 of 11; see also Dkt. No. 14 at 1-2.) The parties do not dispute the fact that all three jobs identified by the VE were for semi-skilled work, and the parties do not dispute that the ALJ did not perform any analysis of the transferability of skills.

The only question, then, is whether the failure to perform transferability analysis constitutes reversible error; the undersigned agrees with Plaintiff that the instant case should be reversed and remanded. Social Security Ruling 82-41 delineates when transferability of work stills is at issue:

> Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled.

SSR 82-41, 1982 WL 31389, at *1. Based on the foregoing, transferability of skills is an issue in the instant case, as the conditions set forth in Social Security Ruling 82-41 are met: the ALJ found Plaintiff had severe impairments that did not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations; Plaintiff could not perform her past relevant work; and Plaintiff's past relevant work was skilled. Social Security Ruling 82-41 further states,

> When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation. When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision.

Id. at *7.

The three jobs identified by the VE–which were either "SVP 3" or "SVP 4"–are all semiskilled jobs. See SSR 00-4p, 2000 WL 1898704, at *3 ("[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 . . . ."). Citing to 20 C.F.R. § 404.1564(b)(4) and 20 C.F.R. § 416.964(b)(4), the Commissioner contends that because Plaintiff "completed formal schooling through high school as well as two years of college, . . . the ALJ need not analyze transferable skills." (Dkt. No. 13 at 7-8.)[3] The regulations to which the Commissioner points provide, *inter alia*,

> The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education. In evaluating your educational level, we use the following categories:
> . . .
>> High school education and above.  High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. **We generally consider that someone with these educational abilities can do semi-skilled through skilled work**.

20 C.F.R. § 404.1564(b) (emphasis added); see also 20 C.F.R. § 416.964(b).

The argument made by the Commissioner was considered–and rejected–in Lundy v. Astrue, Civ. A. No. 4:07-cv-205-A, 2008 WL 1868324 (N.D. Tex. Apr. 17, 2008). In Lundy, the ALJ found that the plaintiff had severe impairments that did not meet or equal the criteria of any listed impairment and that the plaintiff could not return to her past relevant work, which was all

---

[3] Plaintiff testified that she completed high school in 1983, two years at USC in 1985, and "tech" in 1990. (See R. at 27, 47.)

classified as semi-skilled. See Lundy, 2008 WL 1868324, at *2. The VE testified, however, that the plaintiff could perform work as a courtesy booth cashier, auto self-service attendant, and bill collector, all of which constituted semi-skilled work. Id. In district court, the plaintiff contended the ALJ "erred in declaring that the transferability of acquired work skills was not an issue, and compounding this error, the ALJ failed to ask the vocational expert about any skills that [the plaintiff] had acquired in her previous work and whether these skills could be applied to the other jobs that the vocational expert had identified." Id. at *3.

Much like in the case *sub judice*, the plaintiff in Lundy was considered a younger individual and had graduated from high school, and the "Grids" in the instant case as well as in Lundy indicated "'not disabled,' regardless of the presence of transferable skills acquired from previous work experience." See Lundy, 2008 WL 1868324, at *3. And as in the case *sub judice*, the ALJ in Lundy did not question the VE about skills that the plaintiff had acquired that would transfer to the semi-skilled work the VE indicated the plaintiff could perform, nor was there evidence of a recently completed education that would allow for direct entry into the semi-skilled occupations identified. See id. at *4. The United States District Court for the Northern District of Texas rejected the Commissioner's argument that the plaintiff's "general education level alone is sufficient evidence of her ability to perform a different semi-skilled occupation from work she did in the past." Id. The court stated,

> The administrative regulations and rulings recognize education and work experience as distinct concepts. Under the regulations, a person's education level refers to formal schooling or other training that contributes to the ability to meet vocational requirements, such as reasoning, language, and arithmetic skills. 20 C.F.R. §§ 404.1564, 416.964. Work experience encompasses the skills and abilities acquired through work done in the past, which shows the type of work a claimant may be expected to do. 20 C.F.R. §§ 404.1565, 416.965. Education level may be an indicator of a person's vocational capacity, but a person's acquired work skills may or may not be commensurate with her formal education. Social Security Ruling 82-41. And even if Lundy has acquired skills through education, there is no evidence what those skills might be. The Commissioner's position that they exist in the abstract is not sufficient.
>
> It is the Commissioner's affirmative burden at Step Five to "link up" the claimant's skills with a proposed job, but the Commissioner failed to do so in Lundy's case.

> Moreover, when issues of skills and transferability must be decided, the adjudicator is required to make express findings of fact and include them in the written decision. The ALJ did not make any of the necessary findings because he assumed that transferability was not at issue, but logic dictates that a claimant who cannot perform past relevant work must have transferable skills that equip her to perform the new semi-skilled occupations that fall within her residual functional capacity. At the very least, there are inconsistencies that must be resolved because the ALJ referred to a Guideline rule that pertains to a worker with no transferable skills, but then found other work available for Lundy based on vocational expert testimony that identified three suitable occupations-all of which are semi-skilled.
>
> The ALJ erred in finding that the existence and transferable nature of Lundy's job skills was not material to the determination of disability. The ALJ's failure to develop the record related to the issue of Lundy's skills and transferability of those skills also leaves the Commissioner's decision at Step Five unsupported by substantial evidence.

Lundy, 2008 WL 1868324, at *4-5 (citations omitted).

The undersigned is persuaded by the reasoning in Lundy, and a plain reading of Social Security Ruling 82-41 indicates that transferability *is* at issue in the instant case. See SSR 82-41, 1982 WL 31389, at *1 ("Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled.").[4] Furthermore, Social Security

---

[4] The next sentence of Social Security Ruling 82-41 provides,
> When the table rules in Appendix 2 are applicable to a case, transferability will be decisive in the conclusion of "disabled" or "not disabled" in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of "not disabled" may be based on the ability to do unskilled work.

SSR 82-41, 1982 WL 31389, at *1. Of course, the parties agree in the instant case that the Grids were not conclusive. And it is not clear to the undersigned that the Plaintiff has the ability to do unskilled work, given the ALJ's conclusion that the Plaintiff is unable to stoop and "can do work that provides a sit-stand option." See SSR 96-9p, 1996 WL 374185, at *8 ("An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping."); SSR 83-12, 1983 WL 31253, at *4 ("There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand

(continued...)

Ruling 83-10 states that the "[a]bility to perform skilled or semiskilled work depends on the presence of acquired skills which may be transferred to such work from past job experience above the unskilled level or the presence of recently completed education which allows for direct entry into skilled or semiskilled work." SSR 83-10, 1983 WL 31251, at *3. The ALJ did not discuss transferability at the hearing; the ALJ's decision indicates transferability is not material; and there is no evidence in the record of recently completed education. In light of the foregoing, the undersigned is unable to conclude the Commissioner's decision is supported by substantial evidence and therefore recommends remanding the case. See Lundy, 2008 WL 1868324; Wilson v. Astrue, Civ. A. No. 08-40228-FDS, 2010 WL 1379889, at *6-8 (D. Mass. Mar. 30, 2010) (rejecting the Commissioner's argument that the ALJ was "entitled to find that [the plaintiff] could perform semi-skilled work despite making no finding on transferability of skills" where "the Grid advises a ruling of 'not disabled' . . . whether or not [the plaintiff] has transferable skills" because the plaintiff's "situation meets the criteria under SSR 82-41 for when transferability of skills is an issue"; "when the ALJ is required to make a finding on transferability of skills and he does not make such a finding, the district court is left with an insufficient record on which to assess the ALJ's determination"); see also Powell v. Astrue, Civ. A. No. 0:10-686-JMC-PJG, 2011 WL 5104503, at *3-4 (D.S.C. Aug. 26, 2011), adopted at 2011 WL 5104509 (D.S.C. Oct. 27, 2011) (reversing and remanding where the ALJ concluded the plaintiff did not have transferable skills but also found the plaintiff was not disabled based on the ability to perform semi-skilled light work).

---

[4](...continued)
at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base."). It therefore appears to the undersigned that this case likely turns on the transferability of skills; such an analysis is best left to the ALJ. See, e.g., Radford v. Colvin, 734 F.3d 288, 294-95 (4th Cir. 2013) ("Although we hold that the district court did not apply the wrong legal standard, we nonetheless vacate its judgment because it chose the wrong remedy: Rather than 'reversing' the ALJ and remanding with instructions to award benefits to Radford, the district court should have vacated and remanded with instructions for the ALJ to clarify why Radford did not satisfy Listing 1.04A.").

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the undersigned recommends that the Commissioner's decision be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

May 21, 2015
Charleston, South Carolina